**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 23 EAP 2013 |
| | : |
| Appellee | : Appeal from the Judgment of Superior |
| | : Court entered September 11, 2012 at No. |
| | : 1336 EDA 2010, affirming the Judgment of |
| v. | : Sentence entered April 16, 2010 in the |
| | : Court of Common Pleas of Philadelphia |
| | : County, Criminal Division, at Nos. |
| HAROLD WINSTON NOEL, JR., | : CP-51-CR-0011510-2008; |
| | : CP-51-CR-0011511-2008 and |
| Appellant | : MC-51-CR-0033142-2008. |
| | : |
| | : ARGUED:   September 11, 2013 |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

MR. JUSTICE STEVENS                                    DECIDED:   November 21, 2014

Appellant, Harold Winston Noel, Jr., has been convicted of robbery and related offenses, and sentenced to an aggregate 29 to 58 years' imprisonment for these crimes. In this discretionary appeal, he does not challenge the sufficiency of the evidence to sustain his convictions, but instead insists that the trial court's failure to conduct voir dire in strict compliance with Rule 631 of the Pennsylvania Rules of Criminal Procedure entitles him to a new trial.   We have studied the asserted error, and the prejudice it is alleged to have caused, and find that the jury selection process employed by the trial court does not compel reversal of the judgment of sentence entered below.

In Pennsylvania, impaneling a jury in criminal cases is governed by Chapter 6, Part C(1) of the Rules of Criminal Procedure.   In non-capital cases such as the one

currently before us, Rule 631, formerly Rule 1106, provides two methods of voir dire, and directs that it is within the discretion of the trial judge to choose which alternative to employ. Pa. R. Crim. P. 631(E)(1)-(2); Commonwealth v. Berrigan, 509 Pa. 118, 135, 501 A.2d 226, 235 (1985). The first alternative, the "individual voir dire and challenge system," is set forth in Rule 631(E)(1), which directs as follows:

> (a) Voir dire of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.
>
> (b) Challenges, both peremptory and for cause, shall be exercised alternately, beginning with the attorney for the Commonwealth, until all jurors are chosen.[1] Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury of fewer than 12, pursuant to Rule 641.

Pa. R. Crim. P. 631(E)(1)(a)-(b) (footnote added). The second alternative for selecting a jury in a non-capital criminal case, the "list system of challenges," is set forth in Rule 631(E)(2), which directs that:

> (a) A list of prospective jurors shall be prepared. The list shall contain a sufficient number of prospective jurors to total at least 12, plus the

---

[1] "A challenge for cause is directed at a prospective juror's ability to serve, while a peremptory challenge may be exercised for any reason or no reason at all." Commonwealth v. Chmiel, 585 Pa. 547, 577 fn. 13, 889 A.2d 501, 518 fn. 13 (2005) (citing Commonwealth v. Evans, 212 Pa. 369, 61 A. 989 (1905)). The parties have the right to challenge a prospective juror for lack of impartiality, and must show that the prospective juror possesses a fixed, unalterable opinion that would prevent him or her from rendering a verdict based solely on the evidence and the law. Commonwealth v. Smith, 518 Pa. 15, 36, 540 A.2d 246, 256 (1988) (citations omitted). The primary function of a peremptory challenge is to allow parties to strike prospective jurors whom they have good reason to believe might be biased but who are not so clearly and obviously partial that they could otherwise be excluded from the panel. Bruckshaw v. Frankford Hosp. of City of Philadelphia, 619 Pa. 135, 153, 58 A.3d 102, 112 (2012) (citation omitted).

number of alternates to be selected, plus the total number of peremptory challenges (including alternates).

(b) Prospective jurors may be examined collectively or individually regarding their qualifications. If the jurors are examined individually, the examination may be conducted beyond the hearing and presence of other jurors.

(c) Challenges for cause shall be exercised orally as soon as the cause is determined.

(d) When a challenge for cause has been sustained, which brings the total number on the list below the number of 12 plus alternates, plus peremptory challenges (including alternates), additional prospective jurors shall be added to the list.

(e) Each prospective juror subsequently added to the list may be examined as set forth in paragraph (E)(2)(b).

(f) When the examination has been completed and all challenges for cause have been exercised, peremptory challenges shall then be exercised by passing the list between prosecution and defense. …

Pa. R. Crim. P. 631(E)(2)(a)-(f).

Thus, under the individual method, the parties examine one prospective juror at a time and must exercise for cause and peremptory challenges to that juror before moving on to an examination of the next, so the decision whether to exercise a peremptory challenge is made without knowledge of the jurors yet to be examined, and with potential for cause challenges remaining. Under the list method, on the other hand, peremptory challenge decisions are made with knowledge of the entire prospective jury pool, and after all for cause challenges have been exercised. As a panel of the Superior Court explained:

The critical difference between the two methods of jury selection is that in the case of individual voir dire, an attorney selecting a jury sees and examines only one prospective juror at a time. At the time an attorney must decide whether to challenge the particular juror in question, the attorney knows absolutely nothing about which panel member might next be called for examination. Under the list system, on the other hand, … the attorneys know the entire panel of prospective jurors by name, face

and the qualifications revealed by the <u>voir</u> <u>dire</u> colloquy prior to the time the list is passed back and forth.

<u>Commonwealth v. Pittman</u>, 466 A.2d 1370, 1374 (Pa. Super. 1983).

In the instant matter, employing the list system of <u>voir</u> <u>dire</u> under Rule 631(E)(2), the parties began to select twelve jurors and two alternates by examining an initial pool of 41 prospective jurors.  N.T. 2/8/10 at 16.[2]  Counsel and the trial judge agreed to pose additional questions to the pool after several prospective jurors were excused for cause or hardship.  <u>Id</u>. at 185.  As the result of what is best described as a miscalculation on the part of the trial court, however, the final four people on the list were dismissed before such questioning occurred.  <u>Id</u>.  Thus, after the remaining excusals for hardship and cause were made, only 23 prospective jurors remained.  <u>Id</u>. at 207-208.  As noted above, Rule 631(E)(2)(d) directs that "when a challenge for cause has been sustained, which brings the total number on the list below the number of 12 plus alternates, plus peremptory challenges, (including alternates), additional prospective jurors shall be added to the list."  Pa. R. Crim. P. 631(e)(2)(d).  Instead of immediately adding to the pool, however, the trial court suggested that the parties begin making peremptory challenge decisions on the prospective jurors then available.  N.T. 2/8/10 at 207.[3] Noting that a "fresh panel" had been ordered for the following day, the trial court declined the Assistant District Attorney's suggestion that the exercise of peremptory challenges should wait until that time.  <u>Id</u>. at 208-209.  An extensive discussion of the requirements of Rule 631(E)(2) ensued, and although Appellant's counsel objected to passing the list at

---

[2] The jurors were numbered 1 through 42, but for unknown reasons, juror 27 had been scratched from the list.   N.T. 2/8/10 at 16.

[3] It appears that the trial court was attempting to avoid requiring unneeded members of that day's jury pool to return for a second day.   N.T. 2/8/10 at 209.

that time, the objection was overruled.  Id. at 209-224.  As such, the parties were asked to make peremptory challenge decisions as to the initial pool of prospective jurors, without having knowledge of the prospective jurors to be examined the following day.

The Commonwealth proceeded to exercise six of its seven allotted peremptory challenges, while Appellant chose to use all seven.[4]  Thus, at the end of the first day of jury selection, ten jurors had been accepted, and four seats remained to be filled. Additional prospective jurors were presented the following day, and Appellant renewed his objection to the trial court's failure to add additional jurors to the jury pool before the parties exercised peremptory challenges.  The objection was overruled, and voir dire was conducted in the same manner as it had been the previous day, i.e. - the parties exercised for cause challenges, and then the Commonwealth exercised its one remaining peremptory challenge.  The record thus shows that the trial court's deviation from the method of voir dire set forth in Rule 631(E)(2) did not limit the number of peremptory challenges to which the parties were entitled under Pennsylvania Rule of Criminal Procedure 634,[5] but resulted in the parties being asked to make peremptory challenge decisions before all prospective jurors had been examined, so that the voir dire method took on the characteristic of Rule 631(E)(1), wherein for cause and peremptory challenge decisions are made without knowledge of the prospective jurors yet to be examined.

With Appellant's jury seated, the matter proceeded to trial.  The evidence presented revealed that on June 29, 2008, as Eugene McPeak was putting groceries in

---

[4] Appellant does not dispute that he could have reserved peremptory challenges for the following day.

[5] "In trials involving a non-capital felony and when there is only one defendant, the Commonwealth and the defendant shall each be entitled to 7 peremptory challenges." Pa. R. Crim. P 634(A)(2).

his vehicle at the ShopRite grocery store located on Aramingo Avenue in Philadelphia, a black man wearing black clothing approached him and demanded the cash McPeak had in his hand. When McPeak refused, the man pulled out a gun and pushed McPeak, before walking away toward Aramingo Avenue. McPeak reported the incident and described the man to police, but he was unable to identify the perpetrator from a group of men the police assembled that day, nor did could he identify the man during a later line up.

Additional evidence presented revealed that, while walking near Aramingo Avenue and Somerset Street, Zachary Willis was approached by a black man wearing black clothing, who pointed a gun at Willis and demanded his wallet. Willis surrendered the wallet, and the man fled. Police responded to the scene and eventually transported Willis to Wishart Street, where he identified Appellant as the man who robbed him. Willis also identified Appellant's co-conspirator, Steve Reiner (a.k.a. Michael Reiter), a man Willis had seen staring at him while driving by in a black Mitsubishi on Somerset Street, immediately prior to the robbery. During trial, Willis again identified Appellant as the man who robbed him on June 29, 2008, but McPeak testified that Appellant was not the man he encountered that day.

Further evidence was offered by Reiner, who agreed to testify against Appellant in exchange for the Commonwealth waiving the mandatory minimum sentencing requirements applicable to him. Reiner explained that he and Appellant had driven Reiner's black Mitsubishi to Philadelphia on June 28, 2008, and had then used heroin and drove around all night. The next day, they picked up a woman named Sara Stayton and decided to rob a drug dealer she arranged for them to meet in the Aramingo Avenue

ShopRite parking lot. According to Reiner, when the dealer did not appear, Appellant got out of the Mitsubishi and approached McPeak. Reiner saw Appellant pull out a pistol, but he returned empty handed, and the trio drove away. They soon encountered Willis, whom Appellant then robbed with the pistol. Reiner testified that after robbing Willis, he and Appellant bought cocaine and heroin and got high in the car. In the meantime, police had been notified that a black Mitsubishi was involved in a robbery in the neighborhood. When a police cruiser began following Reiner, a car chase ensued, ending when Reiner crashed the Mitsubishi. Reiner fled in one direction, carrying the pistol. Appellant fled in another direction, carrying a BB gun that belonged to Reiner. Reiner testified that he disposed of the pistol as he ran. This was observed by the pursuing police officers, who recovered the pistol. Officers also recovered the BB gun in a schoolyard through which Appellant was observed running. Another officer soon encountered Appellant, and saw him discard several items before he was apprehended. The items included Appellant's ID, Willis' ID, and several of Willis' credit cards.

On February 19, 2010, the jury found Appellant not guilty of the robbery of Eugene McPeak, but guilty of criminal conspiracy to commit robbery,[6] possession of an instrument of crime,[7] and possession of a firearm with manufacturer's number altered.[8] With regard to the second victim, Zachary Willis, the jury found Appellant guilty of robbery,[9] criminal conspiracy to commit robbery, firearms not to be carried without a

---

[6] 18 Pa. C. S. § 903
[7] 18 Pa. C. S. § 907
[8] 18 Pa. C. S. § 6110.2
[9] 18 Pa. C. S. § 3701

license,[10] possession of an instrument of crime, possession of firearms by a prohibited person,[11] and possession of a firearm with manufacturer's number altered.

Appellant filed a direct appeal to the Superior Court, seeking a new trial on the grounds that the trial court violated Rule 631 and the prosecution engaged in misconduct during closing argument. As it pertains to our current review, Appellant supported his allegation of error regarding Rule 631 with citation to the specific requirements of the Rule itself, a single Superior Court case suggesting in dictum that employing a hybrid method of voir dire violates Rule 631, and three federal cases pertaining to the important role peremptory challenges play in securing a fair and impartial jury. Appellant insisted that the trial court's "clear violation" of Rule 631(E)(2) "deprive[d] [him] of what the United States Supreme Court has repeatedly described as an essential means for the selection of a fair and impartial jury." Appellant's Superior Court brief at 11. He asserted that by requiring the parties to exercise peremptory challenges before the exercise of all challenges for cause, the trial court violated Rule 631(E)(2) and prejudiced Appellant by denying him "'the opportunity to exercise his preemptory [sic] challenges on a priority basis after all prospective jurors ha[d] been examined' so that 'each attorney may strike off the jurors he or she least prefers to hear the case.'" Id. at 15 (citing Pa. R. Crim. P. 631(E)(2); Commonwealth v. Clark, 802 A.2d 658, 663 n. 3 (Pa. Super. 2002)).[12]

---

[10] 18 Pa. C. S. § 6106
[11] 18 Pa. C. S. § 6105
[12] The defendant in Clark had similarly asserted to the Superior Court that he was entitled to a new trial because the method of voir dire used by the trial court forced him to exercise peremptory challenges before exercising all for cause challenges. Vacating and remanding on other grounds, the Superior Court noted in dictum that the method of voir dire "violate[d] the strict wording of Rule 631," but the court specifically declined to (continued…)

Regarding the "importance of peremptory challenges to criminal defendants' right to a fair trial," Appellant quoted the United States Supreme Court's comment that "[w]hile the constitution does not confer a right to peremptory challenges, … those challenges traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury," and its acknowledgment of the "long and widely held belief that peremptory challenge is a necessary part of trial by jury." Appellant's Superior Court brief at 16 (quoting Batson v. Kentucky, 476 U.S. 79, 91, 106 S.Ct. 1712, 1720 (1986); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). Appellant additionally relied on United States v. DeJesus, 347 F.3d 500, 505-506, (3d Cir. 2003), which noted that peremptory strikes "serve an important role in empaneling fair and impartial juries." Appellant's Superior Court Brief at 16-17.[13] Appellant concluded his argument that the trial court's error entitled him to a new trial by asserting:

> Accordingly, it hardly can be claimed that the trial court's violation of Rule 631 requiring counsel to exercise his peremptory challenges before all prospective jurors were examined and challenges for cause made was of no consequence. Rather, the court simply disregarded a rule specifically designed to contribute to a defendant's right to a trial before an unbiased jury.

Id. at 17.[14]

---

(…continued)
express an opinion on whether the violation would have warranted a new trial. Clark, 802 A.2d at 663 fn. 3.

[13] In DeJesus, the United States Third Circuit Court of Appeals was confronted with a defendant's allegation that the prosecution's use of peremptory strikes was based on race or religious affiliation, violating Batson. DeJesus, 347 F.3d at 505.

[14] Thus, Appellant did not assert that he was denied the correct number of peremptory challenges, that the trial court erred in refusing any of the peremptory challenges he sought to exercise, or that he was forced to exercise a peremptory challenge on a juror who should have been removed for cause. His allegation was simply that he was
(continued…)

The Commonwealth countered that Appellant was not entitled to the windfall of a new trial because he failed to prove that his right to a fair and impartial jury was violated. Even assuming the method of <u>voir dire</u> employed could be considered a violation of Rule 631, the Commonwealth asserted, the violation was wholly technical, Appellant was not prejudiced by the mere fact that he was required to make peremptory determinations before all challenges for cause were made, and he had failed to demonstrate that his right to a fair and impartial jury was violated. Citing <u>Commonwealth v. DeMarco</u>, 481 A.2d 632, 640 (Pa. Super. 1984),[15] and <u>Pittman</u>, 466 A.2d at 1373,[16] the Commonwealth

_____

(…continued)

entitled to a new trial because the trial court deprived him of the opportunity to exercise his peremptory challenges after having examined the entire pool of prospective jurors. Appellant's requested relief was based solely on the claim that he was prejudiced by a mistake in the *process* of <u>voir dire</u> prescribed by the procedural rules, but he never asserted that the mistake actually caused the jury, as seated, to be unfair or biased.

[15] In <u>DeMarco</u>, the appellant asserted that the failure of the court to supply him with a roster of jurors, detailing the order in which alternates were to be selected, resulted in an unfair selection process. The Superior Court, noting that the appellant had not alleged any material prejudice arising from the selection process, nor argued that the process failed to conform to Rule 1106(E)(2), agreed with the trial court that "the purpose of <u>voir dire</u> is not to provide counsel with the basis for exercising peremptory challenges, but is limited to the determination of whether a juror is subject to being challenged for cause, for lack of qualification, or for holding a fixed opinion or bias." <u>DeMarco</u>, 481 A.2d at 640.

[16] In <u>Pittman</u>, the appellant asserted that the trial court violated Rule 1106(E)(1)(b) by allowing the Commonwealth to exercise a peremptory challenge to a juror who had been accepted by both sides, because Rule 1106(E)(1)(B) specifically states that once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Although the Superior Court noted that the trial court had employed a hybrid method of selecting the jury not within the ambit of the individual system prescribed by Rule 1106(E)(1), it nevertheless concluded that:

> The allowance or disallowance of a peremptory challenge, without more, sheds neither light nor doubt upon the competence, fairness or impartiality of the jury selected to hear the evidence. Taint will arise, if at all, from unfairness inherent in the mechanics of the selection process itself. It is

(continued…)

emphasized that the purpose of <u>voir</u> <u>dire</u> examination is to provide the accused with a competent, fair, impartial and unprejudiced jury, not to provide counsel with a better basis to exercise peremptory challenges. In the case at bar, the Commonwealth insisted, Appellant had not attempted, much less succeeded, to show that the <u>voir</u> <u>dire</u> method resulted in an unfair, partial or prejudiced jury, and absent prejudice in that regard he was not entitled to a new trial.

The Superior Court majority opinion agreed with Appellant that the trial court erred in its administration of jury selection, but nevertheless concluded that a new trial was not warranted. <u>Commonwealth v. Noel</u>, 53 A.3d 848, 857 (Pa. Super. 2012). In so determining, the majority concluded that the error was not prejudicial <u>per</u> <u>se</u> because the very aspect of the <u>voir</u> <u>dire</u> method complained of, i.e. requiring the parties to make peremptory challenge decisions while there were jurors left to be examined and potential for cause challenges to be made, was a characteristic specifically authorized by Rule 631(E)(1). The majority further found that because Appellant never asserted that the jury, as seated, was unfair or unqualified, he had failed to establish that the method of <u>voir</u> <u>dire</u> caused actual prejudice requiring a new trial. The majority specifically noted

<hr>

(…continued)

> only when the court permits the selection process to impugn the fundamental qualities of competence, fairness and impartiality that we may conclude that a "palpable abuse of discretion" has been committed. Our review of the record in this case convinces us that the actions of the trial court did not undermine any of the fundamental qualities of the jury which heard this case.

<u>Pittman</u>, 466 A.2d at 1374. The Superior Court further concluded that even if error had occurred, "[e]rror in the abstract does not require a new trial," and "[e]rror which does not result in prejudice to the accused or deny the accused a fair trial does not warrant an appellate court's reversal of the trial court's denial of a motion for a new trial." <u>Id</u>. at 1375.

that the circumstances at bar did not involve the forced use of a peremptory challenge to correct the improper denial of a for cause challenge, and the subsequent exhaustion of peremptory challenges, thus the majority distinguished this case from instances where a new trial was granted because of the existence of actual prejudice. Noel, 53 A.3d at 857 (distinguishing Commonwealth v. Jones, 477 Pa. 164, 383 A.2d 874 (1978) (new trial granted after the appellant used a peremptory challenge to remove a juror who should have been excused for cause, and then exhausted his peremptory challenges), Commonwealth v. Johnson, 445 A.2d 509 (Pa. Super. 1982) (same), and Commonwealth v. McBee, 405 A.2d 1297 (Pa. Super. 1979) (same)). The majority concluded that here, any error stemming from voir dire was harmless, and denied Appellant's request for a new trial. Noel, 53 A.3d at 857.[17]

The Honorable David Wecht authored a dissenting opinion, indicating that he would reverse Appellant's judgment of sentence and remand for a new trial based on his conclusion that the trial court's misapplication of Rule 631 impaired Appellant's exercise of peremptory challenges and constituted reversible error. In so determining, Judge Wecht specifically disagreed with the majority's conclusion that no prejudice arose as a result of the trial court's error in jury selection, and instead opined that "prejudice necessarily inheres[[18]] where such errors may have compelled a defendant to exhaust his peremptory challenges differently than he would have done absent the error." Noel, 53 A.3d at 860 (Wecht J., dissenting) (footnote added).

---

[17] The majority also determined that the prosecution had not engaged in misconduct. Noel, 53 A.3d at 859.

[18] Inhere is defined as "[t]o exist as a permanent, inseparable, or essential attribute or quality of a thing; to be intrinsic to something." Black's Law Dictionary (9th ed. 2009).

In reaching this conclusion, Judge Wecht did not address the implications of Rule 631(E)(1)'s permitting peremptory challenges before the full jury pool is examined. Instead, despite acknowledging Appellant's "sparse" analysis of federal constitutional principles, Judge Wecht examined the United States Supreme Court's explanation of the historical origins and nature of peremptory challenges, reflecting upon the Court's position, as exemplified in Swain, supra, that any intrusion upon the unfettered right to exercise peremptory challenges constituted reversible error without a showing of prejudice, but also acknowledging the subsequent rejection of the notion that the loss of a peremptory challenge amounts to a violation of the constitutional right to an impartial jury, Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), as well as the rejection of the suggestion that per se prejudice results from any impairment of the exercise of peremptory challenges, Rivera v. Illinois, 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). Judge Wecht pointed out, however, that Rivera also emphasized that states are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error per se.

Turning to Pennsylvania case law, Judge Wecht found guidance in several cases which he believed "assessed the effect of, and remedy for, the impairment of a party's exercise of peremptory challenges," suggesting that "the harm for which they granted relief was the mere **possibility** that the defendant had been cheated of one peremptory challenge." Noel, 53 A.3d at 862, 865 (Wecht J., dissenting) (emphasis in original)

(citing and discussing Commonwealth v. Ingber, 516 Pa. 2, 531 A.2d 1101 (1987);[19] Jones, supra; Commonwealth v. Moore, 462 Pa. 231, 340 A.2d 447 (1975);[20] Johnson, supra; and McBee, supra). Judge Wecht took issue with requiring Appellant to establish prejudice, suggesting that to do so "when the issue is how a criminal defendant **would have used** one or more of his peremptory challenges had not the trial court patently violated the rules governing jury selection is to render a right provided to criminal defendants by Pennsylvania law a "mere abstraction," and, consequently, a nullity." Noel, 53 A.3d at 864 (Wecht, J. dissenting) (emphasis in original).

> The practical result [of the trial court's misapplication of Rule 631(E)(2)] was the same as in Johnson, Jones, and McBee: The trial court placed Appellant in an intractable position under which it is impossible to find beyond a reasonable doubt that he was not denied the opportunity to use the prescribed number of peremptory challenges in the way intended by the rule. This was in derogation of the principles underlying peremptory challenges as reflected in the rules that Pennsylvania has adopted to govern their exercise, and the error was not harmless beyond a reasonable doubt.
>
> For the foregoing reasons, I would hold that a trial court's erroneous infringement upon Appellant's right to exercise a certain number of peremptory challenges by misapplying the rules of criminal procedure, when combined with the subsequent exhaustion of the infringed-upon party's peremptory challenges, rendered the underlying error harmful for precisely the same reasons harm was found in Jones and McBee.

Id., 53 A.3d at 866.

---

[19] In Ingber, a new trial was granted after the appellant used a peremptory challenge to remove a juror who should have been excused for cause, and then exhausted his peremptory challenges.

[20] In Moore, the appellant claimed the trial court erred in failing to grant challenges for cause. On direct appeal, this Court found that, even assuming that the challenges should have been sustained, the proposed jurors were excluded by peremptory challenge and the defense did not exhaust its peremptory challenges, thus the error was harmless.

Appellant sought and was granted discretionary review in this Court as to the voir dire issue. In support of his request that this Court award him a new trial, Appellant reiterates the assertion that the requirements of the Rule itself and the dictum in Clark demonstrate that the trial court violated the strict wording of Rule 631. Appellant's brief at 16. Appellant disputes the Superior Court majority's refusal to find that he was prejudiced as a result of the error, and challenges the majority's conclusion that Appellant's circumstances differ from those in Jones, Johnson, and McBee. Appellant asserts that in so holding:

> [T]he Superior Court simply disregarded Appellant's argument in his brief (at 15) that, citing Commonwealth v. Clark, id. 802 A.2d at 663, n. 4 [sic], that due to the court's error Appellant was deprived of a benefit of the list system of peremptory challenge, namely, "the opportunity to exercise his preemptory challenges on a priority basis after all prospective jurors have been examined" so that "each attorney may strike off the jurors he or she least prefers to hear the case."
> The precise issue for this Court, therefore, is whether on one hand the Superior Court majority's rejection of Appellant's claim of prejudice as well as its rejection of the dissenting Judge's demonstration of prejudice, and its claim to the contrary - that the trial court's error was harmless - were correct. Or whether, on the other hand, prejudice did result from the violation of Rule 631(E)(1) as argued by Appellant, and as Judge Wecht demonstrated with much greater erudition in his Dissenting Opinion: that "prejudice necessarily inheres where such errors may have compelled a defendant to exhaust his peremptory challenges differently than he would have done absent the error".

Appellant's brief at 16-17.

Mimicking Judge Wecht's dissent, Appellant acknowledges that the United States Supreme Court has held that peremptory challenges are "not of constitutional dimension," but he notes that Ross, supra "recognized the right of states to afford greater importance to the exercise of peremptory challenges under state law — and therefore under state constitutional law — than is afforded under the United States Constitution …." Appellant's brief at 17. Appellant emphasizes that Rivera, supra "reiterated a

state's right to grant greater significance to the exercise of peremptory challenges by observing that states 'are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error per se,'" and insists that Pennsylvania Courts have exercised this right to afford greater importance to the exercise of peremptory challenges and have "found prejudice in the deprivation itself, not in its effect on the trial jury as seated."   Appellant's brief at 17-18 (citing Noel, 53 A.2d at 862-863 (Wecht, J., dissenting)).   Appellant does not provide independent analysis on this point, but quotes the following portion of Judge Wecht's dissenting opinion:

> In Jones, upon which rest Johnson and McBee, our Supreme Court found prejudicial error requiring a new trial when the defendant was forced to use a peremptory challenge to cure a trial court's erroneous refusal to excuse a juror for cause and thereafter exhausted his remaining peremptory challenges before the jury was empaneled.   The Jones Court reasoned a fortiori from the Court's prior decision Commonwealth v. Moore, 462 Pa. 231, 340 A.2d 447 (1975):
>> In [Moore ] this Court held that it was harmless error to refuse a proper challenge for cause where the proposed juror was excluded by a peremptory challenge and the defense did not exhaust its peremptory challenges.   It logically follows from [Moore] that it is [not harmless] error to force a defendant to use his peremptory challenges on a person who should have been excused for cause and that defendant exhausts those peremptory challenges prior to the seating of the jury.
> Jones, 383 A.2d at 876.   Thus, our Supreme Court found per se reversible error under Pennsylvania law in circumstances materially identical to those in Ross, in which the United States Supreme Court granted no relief under the federal constitution.   In so doing, the Supreme Court of Pennsylvania availed itself of its prerogative to afford relief under state law—a prerogative underscored in Ross.

Appellant's brief at 18-19 (citing Noel, 53 A.3d at 863).

Appellant lastly asserts that "it is not necessary for the Court to find that all violations of Rule 631(E)(1) are prejudicial per se, or to find that the final empaneled jury consisted of one or more incompetent jurors, to justify a ruling that the error in the present case was not harmless."   Appellant's brief at 19.   Again, in the place of

independent analysis, Appellant provides a lengthy citation to the dissenting opinion for the proposition that "'prejudice necessarily inhere[d]' in the trial court's error in the present case." Id. at 19.

In support of Appellant, the Pennsylvania Association for Justice (Pennsylvania Trial Lawyers Association) has filed an amicus brief which extols the importance of the peremptory challenge and emphasizes the constitutional right to trial by jury. The amicus argues that the right to "ample" peremptory challenge is protected by the Pennsylvania Constitution as well as by rule of court and asserts that the trial court's misapplication of Rule 631 cannot be deemed harmless error and requires automatic reversal.[21]

The Commonwealth urges us to affirm the Superior Court majority, arguing that the particular circumstances presented here required the trial court to interpret Rule 631(E)(2) and use its discretion to determine how to best reconcile the rule with the practical difficulties confronted. Thus, the Commonwealth asserts, the resulting technical violation of Rule 631(E)(2) did not constitute an abuse of discretion. Alternatively, the Commonwealth urges us to find that any technical violation of the rule did not prevent Appellant from exercising the full number of peremptory challenges

---

[21] To the extent that the amicus argues that the trial court's actions here should result in automatic reversal, Amicus Brief at 28-29, we do not reach this claim because amicus cannot raise issues in an appeal which have not been preserved or raised by the parties themselves. Commonwealth v. Allshouse, 614 Pa. 229, 256 n. 18 36 A.3d 163, 179 n. 18 (2012) cert. denied, 133 S. Ct. 2336, 185 L.Ed.2d 1063 (2013). Further, even if Appellant had raised the propriety of automatic reversal, he did not do so before the lower courts, and we cannot review a case upon a theory different from that upon which it was presented to the court below. Commonwealth v. Isabell, 503 Pa. 2, 8-9, 467 A.2d 1287, 1290 (1983).

granted by the procedural rules, did not prejudice Appellant's right to an impartial jury, and thus does not require the drastic remedy of a new trial.

Despite the divergent positions and arguments presented, the specific question before us is whether Appellant is entitled to a new trial because the trial court initially used a method of voir dire which permitted the parties to exercise their peremptory challenges with full knowledge of the prospective jury pool, but switched to a method of voir dire which required them to exercise such challenges without such full knowledge. We conclude that Appellant is not entitled to a new trial as the result of the trial court's method of voir dire.

"The purpose of voir dire is to ensure the empaneling of a fair and impartial jury capable of following the instructions on the law as provided by the trial court." Commonwealth v. Marrero, 546 Pa. 596, 606, 687 A.2d 1102, 1107 (1996) (citing Commonwealth v. Jermyn, 533 Pa. 194, 620 A.2d 1128 (1993), cert. denied, 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994)).[22]   See also Commonwealth v. Tedford, 598 Pa. 639, 672, 960 A.2d 1, 20 (2008); Commonwealth v. Chmiel, 585 Pa. 547, 578, 889 A.2d 501, 519 (2005); Commonwealth v. Crowder, 444 Pa. 489, 491, 282 A.2d 361, 363 (1971).   While the constitution of this Commonwealth guarantees that "[t]rial by jury shall be as heretofore, and the right thereof remain inviolate," Pa. Const. Art. I, § 6, we have interpreted the inviolability of the right to mean "freedom from substantial impairment," and have emphasized that "[i]t does not import rigidity of regulation in the

---

[22] "A criminal defendant's right to an impartial jury is explicitly granted by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution."   Commonwealth v. Ellison, 588 Pa. 1, 7-8, 902 A.2d 419, 423 (2006).   See also Chmiel, 585 Pa. at 578, 889 A.2d at 519 (citing Ross v. Oklahoma, supra).

manner of impanelling a jury. The cardinal principle is that the *essential features* of trial by jury as known at the common law shall be preserved." Commonwealth v. Craver, 547 Pa. 17, 25, 688 A.2d 691, 695 (1997) (citing Commonwealth v. Eckhart, 430 Pa. 311, 314-15, 242 A.2d 271, 273 (1968) (emphasis in original)).

> This Court has long held "[a]lthough a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. 'A defendant is entitled to a fair trial but not a perfect one.'" If a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed.

Commonwealth v. Wright, 599 Pa. 270, 298, 961 A.2d 119, 135 (2008) (citations omitted).

The Rules of Criminal Procedure, including Rule 631, were enacted to provide for the just determination of every criminal proceeding, and shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. Pa. R. Crim. P 101. The process of selecting a jury is committed to the sound discretion of the trial judge and will be reversed only where the record indicates an abuse of discretion, and the appellant carries the burden of showing that the jury was not impartial. Chmiel, 585 Pa. at 578, 889 A.2d at 519.

Peremptory challenges have been a feature of jury selection for hundreds of years, but are not constitutionally guaranteed. As the United States Supreme Court explained, "[a]lthough peremptory challenges are valuable tools in jury trials, they 'are not constitutionally protected fundamental rights; rather they are but one state-created means to the constitutional end of an impartial jury and a fair trial.'" J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 137 fn. 7, 114 S. Ct. 1419, 1426 fn. 7, 128 L.Ed.2d 89 (1994) (citing Georgia v. McCollum, 505 U.S. 42, 57, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33

(1992)). See also Commonwealth v. Wharton, 530 Pa. 127, 144, fn. 6, 607 A.2d 710, 719 fn. 6 (1992); Commonwealth v. Lesko, 553 Pa. 233, 253, 719 A.2d 217, 227 (1998). States may withhold peremptory challenges "altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." McCollum, 505 U.S. at 57, 112 S.Ct. at 2358; Commonwealth v. Henderson, 497 Pa. 23, 30-31, 438 A.2d 951, 954 (1981).

Appellant recognizes this. He also acknowledges that he was permitted the exercise of the full number of peremptory challenges provided to him by Rule 634. He does not dispute that he could have reserved peremptory challenges for the second day of voir dire, as the Commonwealth did. He concedes that the Commonwealth was identically affected by the method of voir dire employed by the trial court. He does not claim that he was forced to use a peremptory challenge to cure the wrongful failure of the court to strike a juror for cause. He does not aver that the trial court erroneously denied him a peremptory challenge to a particular juror. He makes no assertion that the jury, as seated, was unfair or impartial. Instead, Appellant asks that we grant him a new trial based on the singular circumstance that the trial court initially employed the list system of challenges under Rule 631(E)(2), but then, after notice to the parties, altered the method so that they were required to make peremptory challenge decisions as to the jurors examined on the first day of jury selection, before additional prospects were added to the pool. Essentially, he is insisting that a new trial is required because the trial court altered the procedure set forth in Rule 631(E)(2) to resemble, in part, the method allowed by Rule 631(E)(1).

Although the Superior Court majority in the instant matter, like Clark, concluded that a hybrid method of voir dire does not strictly comply with Rule 631(E)(2), and thus constituted error, the Superior Court has not consistently held that the failure to follow either of the two methods prescribed for voir dire necessitates the award of a new trial. See Pittman, 466 A.2d at 1374 ("hybrid method of selecting the jury [] not within the ambit of the individual system prescribed by Rule 1106(E)(1)"); Commonwealth v. Berrigan, 535 A.2d 91, 96-97 (Pa Super. 1987), appeal denied 521 Pa. 609, 557 A.2d 341 (1989), cert. denied 493 U.S. 883, 110 S.Ct. 219 (1989) (noting Pittman's acceptance of "a hybrid system that combined elements of both the list system and the individual system," and finding no abuse of discretion in failing to strictly comply with Rule 1106(E)(2)(c)). Indeed, shortly after the Clark panel expressed its belief that the exercise of peremptory challenges before the exercise of all for cause challenges violated the strict wording of Rule 631(E)(2), a different panel of the Superior Court found that such a violation did *not* warrant a new trial where the appellant failed to show that the error resulted in an impartial jury. Commonwealth v. Williams, 823 A.2d 1031 (Pa. Super. 2003) (table), No. 560 WDA 2001, appeal denied, 574 Pa. 774, 833 A.2d 143 (table).[23] In fact, this Court has

---

[23] In Williams, the trial court first employed the individual voir dire method, then, apparently based on time concerns, switched to the list method. After for cause and peremptory challenges had been exercised however, the jury had not been seated and the pool of prospective jurors had been exhausted. A second panel was assembled and examined the following day, but only for cause challenges were permitted because the parties had exhausted their peremptory challenges on the previous day's panel. On subsequent direct appeal, the appellant claimed that it was error for the trial court to force him to exercise his peremptory challenges without knowledge of the prospective jurors to come, and that the prejudice created by the error required a new trial. The Williams court, noting that the appellant had claimed he was prejudiced by the method of voir dire but had failed to complain that any particular juror was improperly seated or that the jury (continued…)

observed that "[t]here is nothing in Rule 1106 that requires the judge to choose one type of voir dire and to bind him forever to that system of voir dire." Commonwealth v. Glaspy, 532 Pa. 572, 579, fn. 7, 616 A.2d 1359, 1362 fn. 7 (1992).[24]

Here, the trial court's deviation from the specific language of Rule 631(E)(2) was clearly not part of a regular practice, nor was it intended to disadvantage Appellant. We do not view this single instance of combining the characteristics of Rules 631(E)(1) and (2) to require that most serious remedy of a new trial. As the Superior Court expressed in Pittman, "[i]t is only when the court permits the [jury] selection process to impugn the fundamental qualities of competence, fairness and impartiality that we may conclude that a 'palpable abuse of discretion' has been committed." Pittman, 466 A.2d at 1374 (citations omitted). Even if the method of voir dire employed here is viewed as an abuse of discretion on the part of the trial court, Appellant is not entitled to a new trial as the result of the error. Appellant has consistently argued that he was prejudiced by the trial court's instruction to the parties to begin making their peremptory challenge decisions before examining the entire jury pool. This Court has formulated the rules for jury

---

(…continued)
was biased, concluded that even if it were to assume that the method of voir dire violated Rule 631(E)(2), no relief was due because there was no evidence that the appellant had been deprived of a fair trial. Williams, 823 A.2d 1031 (Pa. Super. 2003) (table), No. 560 WDA 2001, unpublished memorandum opinion at 22, 23-24 (citing Commonwealth v. Moon, 389 Pa. 304, 132 A.2d 224 (1957), cert. dismissed, 355 U.S. 908 (1957); Pittman, supra)).

[24] In Glaspy, the Court found that voir dire was initially properly conducted pursuant to the list system of challenges under then Rule 1106(E)(12), but once that method revealed the existence of racial prejudice within the jury pool, it became incumbent upon the trial court to examine the remainder of the juror pool using the individual method to reveal any bias a juror may have harbored. Glaspy, 532 Pa. 572, 579, fn. 7 616 A.2d 1359, 1362, fn. 7 (1992). The Rules of Criminal Procedure have not been amended in a way that would alter Glaspy's conclusion.

selection to specifically allow for a method by which the parties exercise their challenges without such knowledge. Underlying our disagreement with Appellant's insistence that he is entitled to a new trial is our opinion that the method of <u>voir</u> <u>dire</u> employed simply did not deprive Appellant of that which Rule 631 provides. Appellant urges that his exercise of peremptory challenges was impaired because the trial court failed to follow Rule 631(E)(2). It is clear, however, Rule 631 provides two methods of <u>voir</u> <u>dire</u>, one in which peremptory decisions are made one juror at a time, without knowledge of those jurors to come, and the other in which they are made after all jurors have been examined. Here, although the method of <u>voir</u> <u>dire</u> employed was clearly a hybrid of these two methods, and thus did not strictly comply with Rule 631(E)(2), the parties were fully aware of the procedure chosen by the trial court before any challenges were exercised. The <u>voir</u> <u>dire</u> method employed merely combined elements of the individual and the list systems, it did not deprive Appellant of a right so fundamental that it requires the award of a new trial.[25]

The only "harm" that may be attributed to the method of <u>voir</u> <u>dire</u> conducted here is that Appellant, *and the Commonwealth*, were subject to a hybridization of the methods provided for by Rule 631. This is not akin to the forced use of a peremptory challenge

---

[25] If we were to consider it an impairment to require peremptory decisions before the exercise of all challenges for cause and before examination of the full jury pool, every trial in which the jury was selected pursuant to Rule 631(E)(1) would be subject to review. The dissent laments Appellant's fate - "cast upon the horns of this dilemma: Exercise some or all of his peremptory challenges on the devils he knew - i.e., those twenty-three jurors currently remaining from the first day's venire - or retain one or more challenges as hedges against the prospect that even more undesirable jurors might be empaneled the following day" - but the dissent never acknowledges that this very "dilemma" is faced by every litigant choosing a jury under Rule 631(E)(1). "A hard choice is not the same as no choice." <u>Martinez-Salizar</u>, 528 U.S. at 315.

to cure a for cause error. Commonwealth v. Reed, 605 Pa. 431, 445, 990 A.2d 1158, 1167 (2010) (distinguishing Johnson, supra, as involving the forced use of a peremptory challenge to cure a for cause error, from situation where the defendant could not show prejudice because the defendant was not required to utilize a peremptory challenge on a juror who should have been stricken for cause). Because the very aspect of the process Appellant complains of is a feature specifically provided for by Rule 631(E)(1), we decline to find it presumptively or inherently prejudicial. Because Appellant has not demonstrated that the process deprived him of a fair and impartial jury, neither do we conclude that Appellant suffered actual prejudice.

As such, even assuming arguendo that the trial court erred in its method of voir dire, the error was harmless. The harmless error doctrine, as announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and adopted by this Court in Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155 (1978), reflects the reality that the accused is entitled to a fair trial, not a perfect trial. Commonwealth v. Rasheed, 536 Pa. 567, 570-71, 640 A.2d 896, 898 (1994); Commonwealth v. Norris, 498 Pa. 308, 316-17, 446 A.2d 246, 250 (1982). "[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." Story, 476 Pa. at 412–413, 383 A.2d at 166. In instances of alleged trial court error such as the one currently at issue, "the judgment of sentence will be affirmed in spite of the error only where the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict." Commonwealth v. Bullock, 590 Pa. 480, 497, 913 A.2d 207, 218 (2006) (citing

<u>Commonwealth v. Samuels</u>, 566 Pa. 109, 112–13, 778 A.2d 638, 641 (2001)).   Here, we conclude, beyond a reasonable doubt, that the trial court's requirement that the parties make peremptory challenge decisions before all prospective jurors were examined did not contribute to the verdict.   Thus, we affirm the order of the Superior Court.

Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille and Mr. Justice Eakin join in the opinion.

Mr. Justice Baer files a concurring opinion.

Mr. Justice Saylor files a dissenting opinion.

Madame Justice Todd files a dissenting opinion.