**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG M. TIMBERS | : | |
| | : | |
| Appellant | : | No. 2094 EDA 2022 |

Appeal from the PCRA Order Entered August 4, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001236-2010

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.: **FILED SEPTEMBER 22, 2022**

Craig Timbers appeals from the order entered in the Philadelphia Court of Common Pleas on August 4, 2022, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, without a hearing. Timbers raises multiple claims of ineffective assistance of trial counsel. After careful review, we affirm.

We previously reiterated the factual history of this case on direct appeal:

Just before nine o'clock on the night of September 14, 2008, John Borschell, Jr. left his house in Philadelphia and got on his scooter to go to a corner store to buy some milk, bread, and cigarettes for his mother. After making his purchases and exiting the store, [] Borschell lit up a cigarette, got on his scooter, and began driving toward his house. While driving on Unity Street, [] Borschell saw [Timbers] and codefendant Ali Galloway. As [] Borschell passed [Timbers] and Galloway, one of them asked him if he had an extra cigarette. [] Borschell stopped and offered the remnants of a cigarette he had smoked earlier because he did not want to open the pack that he had just bought for his mother.

Galloway began to "freak out" at [] Borschell and both he and [Timbers] began to demand [] Borschell give them money. Galloway then said, "Just shoot the pussy, just shoot the pussy. We're taking your money, take everything." Seeing [Timbers] begin to take a gun out of his hooded sweatshirt, Borschell quickly began to drive away on his scooter, but was shot in the back and then again in the back of his right leg. The second shot caused Borschell to lurch into the air and then land on the street. Thinking he would be shot again, Borschell tried to act like he was dead. After seeing [Timbers] and Galloway had left, [] Borschell began yelling for help. Some people eventually came to his assistance and called 9-1-1.

[] Borschell was taken to Temple University Hospital where he stayed for three days before being transferred to Moss Rehab where he stayed for two months. The gunshot wound to his back left him paralyzed from the waist down. At the time of the trial, Borschell was still in considerable pain and still took medication.

Trial Court Opinion filed 12/6/10 at 2-3 (citations omitted).

On May 11, 2010, a jury convicted Timbers of attempted murder with serious bodily injury caused, robbery, aggravated assault, criminal conspiracy to commit robbery and aggravated assault, and possessing an instrument of crime. On June 22, 2010, the trial court sentenced Timbers to an aggregate term of twenty-seven to fifty-four years' incarceration. The trial court denied Timbers's post-sentence motions. We affirmed the judgment of sentence on direct appeal. *See Commonwealth v. Timbers*, 2365 EDA 2010 (Pa. Super., filed October 4, 2011) (unpublished memorandum). The Pennsylvania Supreme Court denied *allocatur* on March 14, 2012.

On September 17, 2019, Timbers filed a *pro se* PCRA petition. PCRA counsel was appointed, but did not file an amended petition. Instead, counsel

filed a **Turner/Finley**[1] no-merit letter. Counsel stated in the no-merit letter that the petition was untimely filed, Timbers failed to invoke an exception to the PCRA time-bar, and the issues raised in the petition were without merit.

The PCRA court subsequently issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, based on counsel's **Finley** letter, and its own conclusion that the issues raised in the petition were without merit and time-barred. Timbers filed a *pro se* response to the Rule 907 notice. Subsequently, on October 1, 2020, PCRA counsel filed an amended petition, seeking reinstatement of Timbers' appellate rights based on a claim of ineffective assistance of direct appeal counsel for failing to notify Timbers that his petition for *allocatur* had been denied by our Supreme Court, preventing Timbers from filing and litigating a timely PCRA petition. The Commonwealth filed a response, stating that it did not oppose an evidentiary hearing to resolve issues of fact related to timeliness of the PCRA petition.

On June 10, 2022, the PCRA court held a hearing on the limited issue of timeliness. A stipulation was entered that trial counsel sent a letter to Timbers explaining the Supreme Court of Pennsylvania had denied Timbers' petition

---

[1] Counsel petitioning to withdraw from PCRA representation are required to proceed under **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). Counsel must review the record, submit a "no-merit" letter evaluating issues the petitioner wishes to address and explaining their lack of merit, request permission to withdraw, and send the "no-merit" letter and petition to withdraw to their client along with an explanation of their right to proceed *pro se*.

for allowance of appeal, and that Timbers never received that letter. ***See*** N.T., 6/10/22, at 5. The trial court made a finding of fact that Timbers wrote letters requesting information on the status of his petition for *allocatur*, including ten letters to trial counsel from April 6, 2012 to August 18, 2019, four letters to this Court from June 16, 2013 to July 16, 2016, and three letters to our Supreme Court from September 16, 2016 to May 21, 2018. ***See id***. at 11. The first response to any of these letters was from the Supreme Court on August 26, 2019. ***See id***. at 12. Based on these findings of fact, the PCRA court made a conclusion of law that the instant PCRA petition is timely. ***See id***.

On June 29, 2022, the PCRA court issued notice of its intent to dismiss the amended petition without a hearing pursuant to Rule 907, based on its finding that the issues raised in the petition were without merit. On August 4, 2022, the PCRA court dismissed the petition. This timely appeal followed.

On appeal, Timbers argues the PCRA court erred in denying his PCRA petition without an evidentiary hearing. Specifically, Timbers argues he raised meritorious claims of ineffective assistance of trial counsel for failing to (1) object to the complaining witness' comments about the guys who hung out on his street being from the bad area, (2) object to the term candidate or synonyms after a police witness described the people in the photo arrays as suspects, (3) get photo array fillers closer to Timbers' physical appearance, and (4) ask for a mistrial, motion to sever, or objection to codefendant's

counsel's opening statement and when he was making faces to the jury. ***See*** Appellant's Brief, at 2.

Our "standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Walters***, 135 A.3d 589, 591 (Pa. Super. 2016) (citation omitted).

Generally, "[t]he PCRA court may dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post conviction collateral relief, and no legitimate purpose would be served by any further proceedings." ***Commonwealth v. Johnson,*** 139 A.3d 1257, 1273 (Pa. 2016) (citation and internal quotation mark omitted). When the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing." ***Commonwealth v. Khalifah***, 852 A.2d 1238, 1240 (Pa. Super. 2004) (citation omitted).

Timbers's claims challenge the effectiveness of counsel. We presume counsel is effective, and a PCRA petitioner bears the burden to prove

otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Commonwealth v. Kimball*, 724 A.2d 326, 330-332 (Pa. 1999). A petitioner must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015). A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. *See id*. at 1163.

First, Timbers argues trial counsel was ineffective for failing to object when Borschell testified about prior bad acts.[2]

During a redirect examination of Borschell, the Commonwealth inquired as follows about a story Borschell had previously told detectives, before there were any suspects:

> [Borschell]: The point of it was because that part of the neighborhood is real bad where I went down, like right there. The reason I said that to them was because that corner is bunch of younger people. I'm older than they are. And when I was coming down before that, I remember somebody saying, someone asked

---

[2] The argument section of Timbers's appellate brief is not divided into separate parts for each distinct argument he makes on appeal. As such, the brief violates Pa.R.A.P. 2119(a). We decline to find his issues waived, as the difficulties created by his failure to follow the Rules of Appellate Procedure are not so great as to defeat our ability to review his claims.

for a ride. And the voice kind of sounded like it. And when I said that the guy -- I was trying to figure out, like when I went by, I remember because from down the street. And there is some people on this side and some people on this side. So I said the people on this side, like I was trying to pick out in my mind if the people on that corner were from what happened that night.

[Commonwealth]: So, sir, did you know the names of Ali Galloway and Craig Timbers on September 16, 2008?

[Borschell]: Did I know their names when it happened?

[Commonwealth]: Yes.

[Borschell]: No.

[Commonwealth]: But on September 16, 2008, as you were talking to detectives, did you know what the guys looked like, the one that shot you and the one that said, Shoot that pussy?

[Borschell]: Yes, sir.

[Commonwealth]: So if I understand you correctly, you were giving the detectives any information you could about who it may or may not have been?

[Borschell]: Yes, sir.

[Commonwealth]: Can you say with any level of certainty that the people out there with the Mr. T chain or the people hanging out there that they were Ali Galloway and Craig Timbers?

[Borschell]: Can I say that it was them?

[Commonwealth]: Yes.

[Borschell]: No, I can't.

[Commonwealth]: So that was just a hunch on your part?

[Borschell]: That was a hunch.

N.T., 5/5/2010, at 94-95. Timbers argues this testimony "essentially allowed prior bad acts evidence to get improperly introduced".

This claim lacks arguable merit. The above testimony does not discuss any specific bad acts committed by anyone, let alone Timbers. Borschell was simply explaining if he could identify the people he encountered on the street before he was shot. Further, no testimony was provided that Timbers, or his co-defendant Galloway, hung out on that corner. Rather, Borschell acknowledged he was simply discussing a hunch with the detectives and he could not say that he had previously seen Timbers or Galloway on the corner.

Accordingly, the highlighted testimony was not linked to Timbers. It did not constitute evidence of Timbers's, or his co-defendant's, prior bad acts. As such, there is no arguable merit to this claim, there was no basis for counsel to have objected to the above testimony.

Next, Timbers argues trial counsel was ineffective for failing to object to the term candidate, or synonyms, after a police witness described the persons in the photo arrays as suspects.

While questioning a detective about the photo arrays, the Commonwealth referred to a person in the photo array as "the suspect". **See** N.T., 5/6/2010, at 34. Trial counsel immediately objected to the use of the word "suspect". **See id**. at 34-35. The court agreed that the detective had stated he created the photo arrays simply based on people he knew in the area, but instructed the Commonwealth to use a different term. **See id**. at 35.

The prosecutor then substituted the term "prime" for the people in the photo, and the detective suggested the term "candidate". *See id*. Trial counsel again objected. *See id*. The court clarified for the jury that the detective was merely giving a description of how he came up with the photo array, and that there was nothing loaded about the terms used. *See id*. at 35-36 ("There is no implication of anything other than he prepared these arrays based on information he had."). During the rest of this line of questioning, the detective referenced "the person I developed the photo array around" or a similar iteration of the same. *See id*. at 36-39.

The record shows that trial counsel did not fail to object to the terms used by the Commonwealth or the detective, but rather objected twice. Furthermore, as described by the trial court to the jury, the photo arrays were generated around multiple people who fit Borschell's description of his assailants and lived in the neighborhood. Other than his co-defendant Galloway, there was no implication that the rest of these "candidates" were involved in the crime or associated with Timbers. Therefore, Timbers's second claim has no arguable merit. Further, the court gave a curative instruction to the jury, explaining that the terms were only intended to explain how the photo arrays were produced. As such, Timbers suffered no prejudice either.

Next, Timbers argues trial counsel was ineffective for failing to select lineup fillers that were closer to Timbers' physical appearance. This claim is without merit.

The lineup information sheet shows that each of the fillers used in the lineup closely matched Timbers in age, height and weight. Timbers was documented to be eighteen years old, five feet and eleven inches in height, and weighing one-hundred and fifty pounds at the time of the lineup. **See** Commonwealth Exhibit C-30. The other five fillers ranged in age from sixteen to twenty-two years old. **See id**. Timbers was neither the youngest nor the oldest member of the lineup. The heights of the fillers ranged from five foot eight to six foot three. **See id**. As such, Timbers was neither the tallest nor the shortest member of the lineup. Finally, four of the fillers  were listed as weighing within five pounds of Timbers's weight. **See id**. Accordingly, we cannot say the record supports Timbers's claim that counsel failed to ensure that the lineup fillers were sufficiently similar to him.

Further, Borschell had already positively identified Timbers as the shooter from photo arrays shown to him a year prior to the lineup in question. On October 7, 2008, detectives met with Borschell while he was receiving residential physical therapy. **See** N.T., 5/4/2010, at 77. While there, the detectives showed Borschell an assortment of photo arrays to try to identify the perpetrators. **See id**. at 78. After taking his time to look through the photos, Borschell identified the shooter in one of the photos, which was a photo of Timbers, and Galloway shortly thereafter. **See id**. at 78-79. Borschell testified that when he first looked at those pictures, he was "[one] hundred

percent sure" that Timbers was the person who had pulled a gun from his hooded sweatshirt. *Id*. at 82.

The lineup at issue was not performed until over a year later, on January 6, 2010. *See* N.T., 5/5/2010, at 10. As Timbers had already been positively identified prior to the lineup, we cannot conclude Timbers suffered any prejudice from any alleged discrepancies in the fillers used during the lineup.

Finally, Timbers claims trial counsel was ineffective for failing to ask for a mistrial or objecting to Galloway's counsel's opening statement. Timbers also asserts that trial counsel should have sought a separate trial when Galloway's counsel was making faces to the jury.

During his opening statement, Galloway's counsel indicated that Galloway and Timbers had never been seen together.[3] Separately, on the second day of trial, Galloway's counsel was rebuked by the trial court for making expressions and faces to the jury in response to statements made by the court. *See* N.T, 5/5/2010, at 39.

Timbers has not shown that he was prejudiced by either of these instances. First, a "mistrial is an extreme remedy … that … must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Bracey*, 831 A.2d 678,

---

[3] Opening statements occurred on the first day of trial, May 4, 2010, but were not transcribed. However, the statement at issue was discussed during a conference held the following day between counsel for the parties and the trial court. *See* N.T., 5/5/2010, at 4-7.

682 (Pa. Super. 2003) (citations, internal quotation marks, and brackets omitted). A "fair trial" does not require a perfect trial. **Commonwealth v. Noel**, 104 A.3d 1156, 1169 (Pa. 2014) (citation omitted). Here, Timbers cannot establish that Galloway's opening statement deprived Timbers of a fair trial. As Timbers concedes, his own defense at trial was not in any way based upon whether he knew Galloway; Timbers asserted that Borschell's identification was flawed. **See** Appellant's Brief, at 10-11. Under these circumstances, we cannot conclude that Timbers was entitled to a mistrial, and this claim lacks arguable merit.

Turning to Timbers's claim that trial counsel should have requested a separate trial after Galloway's counsel made faces at the jury, we again conclude that Timbers has failed to establish that he was entitled to any such remedy. To qualify for a severance, Timbers would have had to demonstrate he was prejudiced by Galloway's counsel's actions. **See Commonwealth v. Mollett**, 5 A.3d 291, 305 (Pa. Super. 2010). The PCRA court concluded that Timbers could not meet this burden. Timbers's appellate brief does not provide any reason for us to disagree with the PCRA court's conclusion. **See** Appellant's Brief, at 11. As such, Timbers is due no relief.

As all of Timbers' claims of ineffective assistance of trial counsel lack merit, we affirm the order dismissing Timbers's PCRA petition.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2023